May it please the court, good morning. My name is Jeffrey Robbins, counsel for defendants appellants in this matter, the government. I would respectfully request three minutes for rebuttal. Your Honor, it is well established in the Immigration and Nationality Act and the jurisprudence of the Supreme Court that review of determinations respecting applications for legalization under the 1986 Immigration Reform and Control Act are limited to singular administrative appeals process and then via a petition for review of final order of removal in the courts of the United States. The action currently before this Court was initially initiated in 1989. In 2001, after what was a second remand from this Court and a trial on the matter, Judge Browning of the District Court of Arizona found in relevant part to the matters before this Court that when the INS had the Immigration and Nationality Act in effect, that the INS service had failed to notify legalization applicants about the availability of waivers and had failed to actually accept and receive waivers from individual legalization applicants that there was a due process violation. Judge Browning issued a resultant order that required that the INS accept and adjudicate such waiver applications. Plaintiffs subsequently filed a motion to enforce the 2001 injunction in 2006. And after hearing the resulting order from Judge Collins, a new District Court judge that took over after Judge Browning obtained senior status, and Judge Collins found that the government had violated the 2001 order. And although the government had accepted waiver applications and although the government had adjudicated those waiver applications, the Court found that the manner in which those applications were adjudicated was improper. Defendants' appellants here submit two points in support of why this Court should reverse and remand the District Court's 2007 order. First, the government contends that the manner in which the 2007 order examined the actual substance of those waiver applications and the implications of the – of how those waiver applications were adjudicated, the implication of that for the ultimate eligibility for legalization, that that – It's a step away, really, because they look at it and they say, well, go ahead and make the determination on the merits. We don't – we're not reviewing which way you determine it on the merits, but just get to the merits. Is that – is that review of the decision or is that just telling people to get going and get to the merits? It is essentially saying get going and go to the merits. But the situation here, the facts are slightly different from if they hadn't acted at all or had denied it for a waiver for perhaps lack of timeliness or something like that. But where the actual adjudication on all of the class members' waiver applications that remained in this class was because it would be futile to adjudicate the waiver, that relates directly to their ultimate eligibility to obtain the status of legalization. Is this case affected at all by the cross-action litigation? I think that was just ruled on involving the 1986 amnesty program as well. I just saw it briefly across my computer screen. There was some sort of settlement in that case. It's in Seattle. No, Your Honor. I don't believe it is. I believe opposing counsel is actually representing the plaintiffs in that case, but – But that's a separate class action with different issues. Yes, Your Honor. Okay.  Justice Kagan, I'm going to ask you a question about the jurisdictional   I'm going to ask you a question about the jurisdictional argument. The jurisdictional argument is that even if your court finds that ultimately the district court properly had jurisdiction to address the manner in which the legalization – the waivers were adjudicated, that ultimately Judge Collins had abused his discretion by finding that USCIS is – and U.S. Citizenship and Immigration Services took over the role of the Immigration and Naturalization Service. Was your jurisdictional objection posed to Judge Browning in the original order and in the hearings? No, it was not. The government did not challenge that the court had jurisdiction to enter the order that it did in 2001, which required that the government accept and adjudicate legalization applications. Well, I guess the question is what was meant then by and adjudicate. The government interprets that position of what to adjudicate based on a couple of different factors. One of those is the findings of fact and conclusions of law in February of 2001 that led to the ultimate judgment and order from Judge Browning. And those findings of fact and conclusions of law after the trial specifically found only that the government violated due process when it failed to actually accept waiver applications and it failed to give notice to class members of the availability of those waiver applications. I guess the problem, though, is I think that the refusal to accept was essentially based on exactly the same ground that they're not getting to the merits now. In other words, I would contend, and the government contends, that it's actually different, Your Honor. The issue in 2001 and prior to that was that the allegation and the facts as they bore out at trial was that the government had actually front desked, it's a term that's used in legalization cases, those applications. They had not accepted them at all. And the issue that this Court in 1999 found was a procedural, might be a procedural violation, was that by not accepting an application, there could ultimately be no record or paper trail to be considered before the Court of Appeals if the individual applicants eventually brought petitions for review of their final orders of removal. But by accepting the applications, the government contends that it was complying with the 2001 order. And our contention jurisdictionally is that by Judge Collins getting into how those applications were adjudicated and the specific merits and the implications that had for an individual's ultimate eligibility for legalization, that that was improper based on the jurisprudence of the court. You accept the application and it permits review, but if somebody manages to prove that they are admissible, our review is to remand it now and go ahead and decide the thing on the waiver on the merits. That might be the case. If they go through What I'm getting at, I guess, is whether it totally frustrates the purposes of the 2002 business and our first remand for the agency to do what it's now doing. Your Honor, I would contend it would be quite the opposite. In fact, what we have is in the majority of these cases, and in no cases where I've seen any specific petition review or other evidence, individuals in the situation of these class members are ultimately not eligible to obtain the status of legalization anyway, because they fail to meet the element of continuous physical presence. Kennedy, what has been accomplished for them by the 2002 order? What's been accomplished for them is the ability to, one, create a record, and, two, an issue that the government did not appeal, is to obtain their deportation records so they can consider whether to bring a challenge to their ultimate deportation. Now, the government's position, even if they can successfully challenge the deportation, and this Court recognized the propriety of the government's position in the matter of Pedroza-Padilla, is that ultimately, even if they challenge their deportation, that their failure to meet the continuous presence element gives them no relief on what facts they're able to prove and what rules of law they're able to establish. But that's something that we contend has to happen on an individualized basis. And in terms of the notion of doing nothing under the 2001 order versus what we view as ultimate judicial efficiency, where it appears in the record that the majority of these claims, the ultimate waiver adjudications are not going to matter. How big is this class? The class has been estimated, the remainder of it, of approximately 140 individuals who have responded in some way, shape, or form to the notice from the government that opposing counsel agreed was an appropriate notice in a Federal Register notice. So it's fairly small. But if I may turn to my second point, that's even if the district court judge properly had jurisdiction to go where he did in terms of the waiver adjudications, that those actions were an abuse of discretion. And as I've noted already, the 2001 order that provides the predicate for all of this should not be read alone or in a vacuum, that the findings of fact and conclusions of law show that any reasonable district court judge looking at how the waiver applications were adjudicated would see that that wasn't something that the court initially considered. The court said adjudicate in 2001. And the court said adjudicate like similarly situated applicants and cited to the BIA's cases of the matter of P and matter of N. And our contention is, and as we can look at the evidence that opposing counsel has cited in their answering brief, they cite three specific exhibits that they contend stand for the proposition that the district court judge in 2001 was aware that the government had denied waiver applications on the basis of futility. But despite having that evidence, the court did not ultimately find that denying a waiver application for futility violated due process. The district court judge in 2001 only found that the failure to receive the application the failure to accept the applications and notify individuals would be what violated due process. And so when the government was interpreting that 2001 order and when a district court judge in 2007 is interpreting the 2001 order, the only logical conclusion that we see is to adjudicate applications like similarly situated waiver applications where in 2001 other waiver applicants were and their applications were treated the same way as USCIS adjudicated waiver applications in 2005 seems consistent with the 2001 order. Finally, Your Honors, I turn to the matter of Pedrosa-Padilla again where an individual in factually exactly similar circumstances to each of the class members on the issue currently before the court sought a petition for review of an order of deportation and at the same time challenged his the denial by USCIS of his legalization application. And as part of that challenge, he also challenged the Administrative Appeals Office, their decision that the denial of his waiver application for futility was ultimately appropriate. And in that case, this Court upheld the AAO's decision in that regard, finding specifically that there was a logical basis for the AAO's reading of the statute and the position on the waiver and disability was appropriate. All right. Counsel, you can reserve your three minutes. Thank you. Good morning, Your Honors. My name is Robert Powell. Appearing here on behalf of the plaintiffs in this case with me is my co-counsel, Robert Gibbs. The issue in this case really should be a relatively simple issue about whether a district court can order the Immigration Service to comply with a prior final order. It's taken 28 years or almost 20 years to get up to that. It's taking a long time. It is, Your Honor. We would like to see the end of this. The government did not appeal that, the March 2001 order. And then the government, the Immigration Service, basically ignored that order and went on to fail to comply with what the Court instructed the Immigration Service to do. We maintain, the plaintiffs maintain, that the district court now can order the Immigration Service to follow the order that was issued in March 2001. Now, the Immigration Service here suggests that, well, you know, maybe that March 2001 order wasn't clear. The June 2007 compliance order goes beyond it and is telling the Immigration Service to do something that was not included in the March order. That's not really correct. A reading of the record shows that that's not really correct. If you look at the initial proposed order in March 2001, the order that was initially proposed to Judge Browning, that order required that waiver applications have to be accepted and placed in the file and adjudicated. And that was the end of the sentence. Then the government objected to that proposed order. They said that, well, you know, class members should not be told that they have a right to file the application, that they pay the filing fee. And in their objection, they said, and I quote, the waivers are not going to be granted anyway. They're going to deny these waivers anyway. In response, we objected and we said, no, that's not right. It's not permissible for the government to deny every single one of those waiver applications. They should adjudicate the applications the same way they're adjudicating applications for all other legalization class members, adjudicate them in And then considering those arguments, the Judge Browning then issued the final order, which included after not only that the applications must be accepted and placed in the file and adjudicated, but then the court explained they must be adjudicated in the same manner as all other legalization applicants, and it's specifically in accordance with matter of N and matter of P. So the court in June of 2007 did not go beyond. It knew exactly what Judge Browning said in 2001, noticed that the Immigration Service had not complied with that order and simply ordered the Immigration Service to comply. The government does rely on points to this case called Inlay JFD. JFD is a case that comes from long before the legalization program, a Board of Immigration Appeals. They cite that for the proposition that, well, you know, it's a general principle that if a waiver is going to be futile, we can deny the waiver anyway. So the government argues the waiver is going to be futile in every case, I believe, because every member of the class has been deported, so therefore they cannot satisfy the continuous residency requirement. Right. So how do you respond to that? We don't know because we don't have their files? Right. Well, because ultimately we don't know whether or not the government is correct with respect to that second determination about whether or not the continuous residence requirement is actually broken. It may well turn out that when we get those deportation files, the complete files, we'll see that the person was not in fact deported or we'll see that the absence was not caused by deportation and so does not break the continuous residence requirement. I mean, there may well be many cases in which the applicant needs a waiver and has not broken. Certainly, and this is what the district court recognized, you know, it's not reaching the merits, the substantive eligibility requirements. There may well be some people who are ultimately denied for failure to meet, but there may well be other class members who are approved or approvable because that continuous residence requirement is not broken. And so when you're dealing with the waiver application, the separate issue, right, there are two separate applications that are filed, two separate decisions that are made in this process, one the legalization application and one the waiver application. The court says when you're looking at that waiver application, adjudicate those. It tells the immigration service to follow a certain legal standard or a certain procedure and adjudicate it. Adjudicate them like you're doing other class members in accordance with these standards, matter of N and matter of P. So that order, which is a procedural order, is different from reaching the substantive eligibility requirement about whether or not the continuous residence requirement is broken. I think this prior case, which the immigration service relies on, the matter of JFD, is very illuminating as to what the district court was thinking should happen. In matter of JFD, the individual was applying for a deportation waiver, and the immigration service cites that for the proposition that, well, when it's futile, you don't have to reach the merits of that. Well, if you look at JFD, in fact, what the board did was it reached the merits. It's the holding or the analysis in that case, and I can quote or paraphrase here from JFD, that the board of immigration appeals looked at the fact that this person applying for the waiver application, looked at the fact that his parents reside here, the parents are supporting, there's a close family connection, and the board says, you know, we've examined the record carefully. We noticed that he has several convictions. There's a recent conviction for theft, and it reaches the merits of the case, balances and says the instant application does not merit favorable exercise of discretion. It applies the right standard and reaches the merits. It also indicates that, well, anyway, we shouldn't have to reach the merits because the person is not statutorily eligible anyway, and it could be denied on that basis. But notice what the board is doing in that case. Just what the district court wants the immigration service to do here is it reaches the merits and makes a decision on the merits. The reason that's important is because suppose the person appeals up to the court of appeals. Well, if it does that, and if the court says, you know what? You're wrong on the statutory eligibility argument. This case should be adjudicated on the merits. Well, then the court has the record right then and there, and it can dispose of the case. If, as here, the agency does not reach the merits in accordance with the right standards, the court says, well, you know what? You are statutorily eligible. The case is not finished. The case has to go back for further consideration of the merits of that waiver application. You know, that's going to take another couple of years. The applicant is really prejudiced because when he should now, after 22 years, should have had a final determination. We're sending the case back down again, and he's going to have to wait for another two or three or four years, and perhaps the case comes back up to the court of appeals again. When if the agency was simply doing what the district court told the agency to do, we wouldn't have that delay problem. With respect to the jurisdictional issue, did the court have jurisdiction? I suppose this issue goes back to the March 2001 order. Did the court in March 2001, did Judge Browning have jurisdiction to issue the order that he issued in March 2001? Well, first of all, the government did not appeal that order. That issue is res judicata. It could have, if it thought that there was no jurisdiction, it could have appealed that order. Second, in any event, and I don't think the court has to reach this issue because it's already been disposed of and not appealed, but if the court does want to look at that jurisdictional issue, we go back to the order issued by this court in 1999, in the Proyecto San Pablo case. And basically the court clearly said that if two conditions are met, then the district court does have jurisdiction. First of all, the plaintiffs are not challenging a substantive eligibility requirement. Well, the court, the district court was very careful to point out we're not challenging, the court is not ruling on a substantive eligibility requirement. It's talking about the waivers. Second, the plaintiffs are not challenging the determination made in any individual case. And here we're not challenging any, you know, it may well be that in an individual case the person files the waiver and on the merits the waiver gets denied. There's no individual review here. In the Proyecto San Pablo case at page 1139, the court says if those two conditions are met, then the plaintiff's claims are not barred by the special jurisdictional rules. So it's very clear under the Proyecto San Pablo, under the decision made in this court in 1999, that the court, the district court does have jurisdiction to issue this order. With respect to the Pedroza-Padilla case, I would just point out that, you know, that decision is consistent with what the district court has done with respect to this class action lawsuit. There's nothing in the Pedroza-Padilla case that indicates or that says that the district court can't issue an order like this in a class, on a class-wide basis. In fact, of course, in Pedroza-Padilla, the applicant, the court determined that the continuous residence requirement was broken. And so in this particular case, the court says, yeah, a waiver would not have done any good in that particular case. But the court also notes in footnote three, notes that there may be other cases, or suggests anyway that there may be other cases in which a class member is able to show that the continuous residence requirement was not broken. Cases in which, in other words, a waiver may turn out to be necessary. And the court specifically notes that it does not reach these other issues. The plaintiff in Pedroza-Padilla wanted to make some additional arguments about why she was eligible, why the continuous residence requirement was not broken. The court said we're not going to reach those issues because they were not exhausted, they were not presented below. So clearly indicates that, you know, there may well be other individuals who can meet the substantive eligibility requirement, and therefore who may benefit from the fact that this waiver is granted. Also, just one final point about the waiver is that that may have carryover value in some circumstances. For example, we have a number of class members who have children now born in the United States who are now over 21. And they can, once a child, a U.S. citizen is over 21, the child can file for the parent. Well, in that circumstance, the applicant will, the individual, a class member, may be able to apply for adjustment of status based on the child, but the individual will need a waiver to be approved. Well, if the waiver is adjudicated and approved in this case, after all the individual filed a waiver application, paid the filing fee, was entitled, should have been entitled to a judgment on the merits of that waiver. If that waiver is approved, that has a carryover value. In other words, when he or she is adjusting status through the child, that person would not have to file another waiver application. The waiver application, parenthetically, today is $595. So very, it's certainly a not an unimportant benefit to have a decision made on the merits that that waiver application may have carryover value as well. I'm happy to answer any questions that Your Honors have. I think we're not shy about interrupting, so thank you very much. Thank you, Your Honors. Your Honors, very briefly, a few points in rebuttal addressing opposing counsel's final point first. That's not an issue that's been briefed in this matter. It's not an issue that was presented to the district court. And ultimately, I believe the position of the Citizenship and Immigration Service would be that any new application would require a new waiver, that waivers go along with applications. The government's now working on the third adjudication of these matters. And one basic misconception here is if that government ultimately, or if the class members are able to obtain evidence that shows that the deportation orders were improper, it's not at the district court or before USCIS that they bring those allegations. They bring those allegations before the circuit courts in terms of petitions for review. And as a result of that, the hope here is to have all these issues resolved, like they were in the case of Mr. Pedroza-Padilla in one case. That is the intent of the statute. Now, given that intent of the statute and given what Judge Browning had before him in 2001, contrary to what opposing counsel says, he did not have two separate decisions of waivers and of legalization applications. When he reached disorder requiring adjudication in that case and in the evidence referenced by opposing counsel, Exhibits 67, 72, and 73, each of those decisions where they found that a waiver was either futile or unavailable were a single decision that addressed everything together, because ultimately in assessing the eligibility for someone to legalize, the government was considering the waiver at the same time in that adjudication. So although they're filed on two separate forms now, it does not change the fact that it's a decision that is on a continuum in terms of their decision-making process. And thus, what the government contends is appropriate denials of waiver applications for futility. Finally, just to address whether adjudication of similarly situated applications and adjudication similar to the matter of P and matter of N is appropriate, the government contends that the adjudications that USCIS undertook comported directly with that. And in our brief, we cite specifically to the provisions and the holdings in the matter of P and matter of N that recognize that if ultimate eligibility for the benefit is not going to be established at the time that the waiver is being adjudicated, that our inference is that there need not be a full adjudication of that waiver. And so in the grand scheme of things, I mean, the government is ultimately submitting that the court should reverse and remand because either the district court lacks jurisdiction to adjudicate, to decide that the adjudication of the waiver applications was improper the way that it did, or ultimately because Judge Collins abused his discretion based on what any reasonable judge looking at the record before it could find was a fair interpretation by the immigration. Kennedy. What's your response to the last point made that if you want to, not last point, but one point made that if you had objections to jurisdiction, you should have raised them, you know, in appeal of the first of the order when it first came? I see I'm out of time. May I briefly respond? I'm not out of time. Our response to that is that that isn't what the government is challenging here. The government doesn't challenge the jurisdiction of the court to enter the order that it – the way it did in 2001. We acknowledge that an order that requires adjudication is something that indeed is procedural, saying adjudicate this and get it done. It's appropriate. It's how the order came about in 2007. All right. Thank you, counsel. Thank you, Your Honor. The act of San Pablo v. DHS is submitted and this session of the court is adjourned here today.
judges: Canby, Wardlaw, Mills